**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-14-00355-001-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| Gregory Lynn Shrader, | |
| Defendant. | |

Before the Court are Defendant's Brief on Issue of Threat in Count One (Doc. 114) and the Government's Memorandum of Law Concerning Non-Verbal Threatening Communications (Doc. 106). Defendant's Brief is offered in support of the oral Rule 29 Motion he made at trial, seeking a judgment of acquittal on count one of the indictment, which the Court reserved. Defendant argues the Government's evidence is insufficient to convict him of "willfully mak[ing] any threat" through the mail, 18 U.S.C. § 844(e), because (1) there was no testimony that Joseph Arpaio received or felt threatened by the package in this case and (2) the bomb-type device in the package did not suggest the sender intended to take future, as opposed to present, action against Arpaio.

The Ninth Circuit has not expressly defined a "threat" for the purposes of § 844(e). "A threat has been defined for application in other statutes as 'an expression of an intention to inflict evil, injury, or damage on another.'" *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990) (quoting *United States v. Gilbert*, 884 F.2d 454, 457 (9th Cir. 1989)) (defining "threat" for purposes of 18 U.S.C. § 115, which prohibits threatening a federal law enforcement officer). "Whether a particular statement

1   may properly be considered to be a threat is governed by an objective standard -- whether
2   a reasonable person would foresee that the statement would be interpreted by those to
3   whom the maker communicates the statement as a serious expression of intent to harm or
4   assault." *Id.* (citing *United States v. Mitchell*, 812 F.2d 1250, 1255-56 (9th Cir. 1987)).
5   As this definition makes clear, it is irrelevant whether Arpaio himself received the
6   package sent by Defendant or how he reacted upon receipt. As long as a rational jury can
7   conclude that a "reasonable person" would foresee a recipient's fearful reaction, a
8   communication qualifies as a threat. *See id.* at 1266 (denying motion for acquittal
9   because "a rational jury could construe [the defendant's] statements as threats"). Here,
10  although the device in question may have lacked a bridge wire, and therefore was
11  arguably not intended to detonate, a jury could rationally conclude the device would
12  reasonably be interpreted as "a serious expression of intent to harm or assault." The
13  Court therefore has little trouble dispensing with Defendant's first ground for his Motion.
14          Defendant's second ground presents a closer question. Defendant asserts that a
15  "threat," by its nature, refers exclusively to action that the threat-maker proposes to take
16  in the future, not action that has already occurred or is occurring in the present. This
17  construction has intuitive appeal. If warnings of present as well as future action could be
18  considered threats, § 844(e) would collapse the difference between a threat and a simple
19  assault. Yet the statutory text, which speaks only of "threat[s]" and the "convey[ing]" of
20  "false information," evidences no intent to accomplish this result. 18 U.S.C. § 844(e).
21  The rule of lenity, which "requires courts to limit the reach of criminal statutes to the
22  clear import of their text and construe any ambiguity against the government," therefore
23  counsels against interpreting the statute in this expansive manner. *United States v. Millis*,
24  621 F.3d 914, 916-17 (9th Cir. 2010) (citations and internal quotation marks omitted)
25  ("[F]undamental principles of due process mandate that 'no individual be forced to
26  speculate, at peril of indictment, whether his conduct is prohibited.'" (citation omitted)).
27  The interstitial nature of the federal criminal code provides further reason to proceed
28  cautiously. Where the "Government's reading of [a statute] would alter sensitive federal-

state relationships, convert an astonishing amount of traditionally local criminal conduct into a matter for federal enforcement, and involve a substantial extension of federal police resources," courts should be "reluctant to conclude that Congress meant to punish [the defendant's] crime with a federal prosecution." *See Bond v. United States*, 134 S. Ct. 2077, 2091-92 (2014) (citation and internal quotation marks omitted). In light of "basic principles of federalism embodied in the Constitution," courts "can insist on a clear indication that Congress meant to reach purely local crimes, before interpreting the statute's expansive language in a way that intrudes on the police power of the States." *See id.* at 2090 (citing *United States v. Bass*, 404 U.S. 336, 349 (1971)). That clear indication is lacking in § 844(e).

Unfortunately for Defendant, his favored construction finds limited support in the case law. Defendant cites to the dissent in *United States v. Zavrel*, 384 F.3d 130 (3d Cir. 2004), which concludes that "a 'threat' contemplate[s] some future conduct by the speaker." 384 F.3d at 139 (Stapleton, J., dissenting). But the *Zavrel* majority, without actually deciding the issue, rejected that position, making clear it did not believe "the phrase 'threat to injure' … should be interpreted as prospective in nature." *Id.* at 135-36.

The Ninth Circuit's formulation of what constitutes a "true threat"—one "where a reasonable person would foresee that the listener will believe he *will be* subjected to physical violence upon his person," *Orozco-Santillan*, 903 F.2d at 1265-66 (emphasis added) (citing *United States v. Merrill*, 746 F.2d 458, 462 (9th Cir. 1984))—does not require a different conclusion. The "true threat" test is rooted in constitutional free speech principles, *see Merrill*, 746 F.2d at 462 (holding that "'true' threats" made against the president of the United States, as proscribed by 18 U.S.C. § 871, are not "political expressions protected by the first amendment"), which have no bearing in the instant case. More important, courts that have considered similar language have almost uniformly found that it applies to past or present action.

One district court, citing circuit precedent requiring that a threat convey "*imminent* prospect of execution*," granted a motion for acquittal on the basis that the defendant's

1 actions—writing a note with the words "Anthrax is here" that a co-defendant left in a
2 carpet store's register area—did not suggest she was threatening to inflict *future* harm on
3 the store owner or employees. *United States v. Taylor*, No. 02 Cr. 73 (RPP), 2003 U.S.
4 Dist. LEXIS 15506, at *2-3, *18-21 (S.D.N.Y. Sept. 8, 2003) (emphasis added) (citing
5 *New York v. Operation Rescue*, 273 F.3d 184, 196 (2d Cir. 2001)). But this case was an
6 outlier when it was decided, and the Second Circuit has since implicitly overruled it,
7 explaining that "nothing in the[] definitions [on which *Taylor* relied] suggests that they
8 apply only to warnings of future acts." *United States v. Davila*, 461 F.3d 298, 302 (2d
9 Cir. 2006). The Fifth Circuit also defines a threat using language that could plausibly be
10 read as requiring the intention to commit *future* action, *United States v. Bozeman*, 495
11 F.2d 508, 510 (5th Cir. 1974) (defining a threat under 18 U.S.C. § 875(c) as a
12 communication that "in its context would have a reasonable tendency to create
13 apprehension that its originator *will act* according to its tenor" (emphasis added)
14 (citations and internal quotation marks omitted)), yet it, too, has expressly declined to
15 limit the term to such communications, *United States v. Reynolds*, 381 F.3d 404, 406 (5th
16 Cir. 2004) ("We have found no credible support for a definition of 'threat' that requires
17 reference to a future act."). The Court is aware of no Ninth Circuit case addressing
18 whether the "will be subjected" language in *Orozco-Santillan* can bear the weight
19 Defendant would like it to.

20 Ultimately, however, it is unnecessary to decide broader questions about the reach
21 of § 844(e). On the narrow facts of this case, the evidence well supports the conclusion
22 that the bomb-type device Defendant mailed was not constructed to explode. The
23 evidence at trial showed the device may have lacked a bridge wire, which would have
24 rendered it incapable of detonation. In addition, the lid was detached from the container
25 of smokeless powder, which cuts against its likelihood of exploding. The jury could take
26 the mailing of such a device—which had the appearance of a bomb, but lacked the ability
27 to explode—as intending its obvious effect on a recipient: a suggestion that a real bomb
28 might be sent in the future.

IT IS THEREFORE ORDERED that Defendant's oral Motion for Judgment of Acquittal is denied.

Dated this 1st day of October, 2014.

_____
Neil V. Wake
United States District Judge