JOHN S. LEONARDO
United States Attorney
District of Arizona

RAYMOND K. WOO
Arizona State Bar No. 023050
PAUL STEARNS
Arizona State Bar No. 029528
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: raymond.woo@usdoj.gov
Email: paul.stearns@usdoj.gov
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR- 14-0355-PHX-NVW (DKD) |
|---|---|
| Plaintiff, | |
| vs. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| Gregory Lynn Shrader, | |
| Defendant. | |

The United States of America, through undersigned counsel, respectfully submits this sentencing recommendation for the Court's consideration.

For the reasons set forth herein, the government recommends that Defendant be sentenced to a 95-month term of imprisonment, followed by the maximum term of supervised release. As part of his conditions of supervised release, he should be banned from having any contact (direct or indirect) with W.S., A.B., E.B. – the three people he repeatedly sued in various courts – as well as R.R. and Defendant's ex-wife, N.H.

**SENTENCING MEMORANDUM**

**A.   Sentencing Factors.**

    **a.   Nature and Circumstances of the Offense.**

The nature and circumstances of Defendant's offenses are very serious. In April of 2013, Defendant committed a serious terrorist act in Arizona by threatening to kill Maricopa County Sheriff J.A. with a bomb-type device.

As shown at trial, Defendant traveled from Oklahoma to Arizona, and then back to Oklahoma, for the purpose of depositing a package in a remote Flagstaff mail collection box unit. Defendant addressed his package to J.A. – at J.A's specific office address in Maricopa County. This was deliberate. Defendant specifically targeted J.A. because of his status as the Sheriff of Maricopa County.

Defendant's package contained an improvised explosive device (IED). The IED was constructed with the components needed for a fully operational bomb.[1] Defendant's device contained a charged battery, wires, a pressure release switch, an ignition source, and dangerous explosive material. Defendant deposited the device into the U.S. mails with the intent that it would be viewed as a serious threat against Sheriff J.A. and that it would be intimidating.

The evidence at trial showed that the IED was taken seriously by: the Postal authorities who discovered the package; the law enforcement officers and agents who responded to the main Flagstaff Post Office; and by the Maricopa County Sheriff's

---

[1] An x-ray examination of the box did not reveal an obvious "bridge wire" near the area where the explosive material would have been ignited. A bridge wire is typically a very thin resistance wire that is used to trigger a detonation. In addition, the United States did not recover a bridge wire from the bomb-type device after its circuitry had been violently torn apart by the Flagstaff bomb squad from a bomb disruption technique. Whether it was actually constructed with a bridge wire is unknown. However, the testimony adduced at trial is that the IED was dangerous – even without the bridge wire.

Office. Moreover, the Sheriff provided a victim impact statement, which is reflected in the draft PSR. (PSR ¶ 11.)

Defendant also had a motive for intentionally threatening to kill J.A. As shown at trial, Defendant had a vendetta against W.S., a former business partner to whom Defendant felt aggrieved by. In order to exact revenge on W.S., Defendant deliberately placed W.S.'s name and address on the return label of the package containing the IED. In addition, Defendant placed paperwork from W.S.'s business inside the package. It was Defendant's hope that his terroristic act would cause J.A., and other law enforcement agencies, to wrongly pursue an aggressive criminal investigation into W.S.

Without question, Defendant's criminal conduct in this case is exceptionally serious and terroristic. For these reasons, a significant term of incarceration at the high end of the applicable guideline range is required to address the nature and circumstances of Defendant's offenses.

  **b.**  **History and Circumstances of the Defendant.**

Defendant is a dangerous repeat felony offender who is vindictive, calculating, and unremorseful.

In this case, Defendant sought revenge against W.S. for a failed business relationship. Over the course of several years, Defendant filed several unsuccessful *pro-se* lawsuits against W.S., A.B., and E.B. in various courts, where he alleged libel, conspiracy, emotional distress, and placing a person in a false light. Defendant sought monetary judgments in excess of $10 million from those that he sued. Defendant's *pro-se* filings were numerous in each of the actions, which placed financial burdens on W.S. and others for their legal fees. Defendant is now pursuing a civil case against W.S., A.B., and others in the Western District of Missouri. (*See* Exh. A, Court Docket from 14-DV-03002-BCW.)

- 3 -

As the civil lawsuits failed at both the trial and appellate levels, Defendant had to find other means to exact his revenge against W.S. From November 2011 to the time Defendant threatened J.A. with the bomb-type device, Defendant engaged in the following course of misconduct to frame W.S. and others for crimes they did not commit.

In November 2011, Defendant sent an anonymous letter to the Federal Bureau of Investigation in San Diego. Defendant's letter was purportedly written by a jihadist and made suggestions that W.S. was involved in terrorist financing. The letter was postmarked from Oklahoma and was purportedly from traderzone.com. Defendant's letter led to a FBI investigation and an interview of W.S.

In January 2012, Defendant sent a second letter to W.S., which purportedly was a letter written by W.S. to a man by the name of Michael Wong. This letter was postmarked from Oklahoma and was also purportedly from traderzone.com. The second letter, which was supposedly written by W.S., implied that W.S., E.B., and A.B. intended to cause some sort of serious harm to Defendant. Shortly after sending the letter to W.S., Defendant submitted the letter to the District Court of Colorado on February 2, 2012, to support his civil claims against W.S. and others.

In February 2012, Defendant sent a letter to Allied Riverside NAR Enforcement in San Jacinta, California. Defendant's letter was written to suggest W.S. was a heroin trafficker who would be receiving a shipment of heroin. Defendant's letter was forwarded to W.S. because it was deemed undeliverable and had W.S.'s address on the return line. As testified to at trial, the government's handwriting expert found it was "probable" that Defendant authored the address on the envelope.

On February 25, 2012, W.S. received a package from Joe Too, a fictitious person, with an address in St. Joe, Arkansas. The package contained a powdery substance, which caused W.S. to notify law enforcement.

- 4 -

On November 30, 2012, the Louisiana State Penitentiary received a package that was addressed to a death row inmate. The package exhibited W.S.'s return address and contained a syringe, a $10 bill, and a substance that field tested positive for a narcotic. This led to an investigation and interview of W.S.

Later in January 2013, various hospitals where A.B. was associated with began receiving letters that were allegedly written by the mother of a twelve year old girl. The letters falsely accused A.B. of sexually abusing her daughter. The listed return address on the letter was determined to be fictitious. A.B. believes the letters to be authored by Defendant, as A.B. is one of the persons who is named in the lawsuits filed by Defendant.

Prior to the events discussed above, Defendant was charged in 2003 with libel, which involved facts that closely parallel some of the conduct related to this case. In 2003, Defendant was residing with a female who was on probation. The probation officer informed the female that she could no longer reside with Defendant because he was a convicted felon. This led to some type of disagreement between Defendant and the probation officer. Thereafter, numerous anonymous mailings were made to various businesses in the Jay, Oklahoma area. Those mailings contained allegations that the probation officer was having an inappropriate sexual relationship with one of his supervisees. The allegations against the probation officer in the anonymous letter were very graphic. That letter was linked to Defendant through a handwriting analysis; however, the libel charge was ultimately dismissed by the prosecutor's office for unknown reasons.

All of the events described above strongly suggest that Defendant is a person who lacks moral responsibility and social conscience. Defendant's course of conduct seems to suggest that Defendant will do almost anything to accomplish his goals, to include the making of deceitful and fraudulent statements to third parties and to the courts. Even now, Defendant continues to engage in deceitful actions. For instance, Defendant has

- 5 -

filed pleadings and motions in the Western District of Missouri where he falsely affirmed: (1) that he resides in a residence in Missouri[2]; (2) that W.S. framed him with a mail bomb in Arizona;[3] (3) that no items found in his home linked him to the mail bomb;[4] and (4) that none of the DNA from the mail bomb matched Defendant[5]. (*See* Exhs. 2 & 3.)[6] Defendant's false affirmations to the District Court in Missouri strongly evidences his lack of respect and candor for the courts, and evidences his willingness to say or do anything to accomplish his goals.

The government has grave concerns that Defendant will not only continue engaging in criminal conduct and gamesmanship of the court system, he will also be motivated to engage in more serious conduct to exact his revenge on persons he believes have aggrieved him. Long term incarceration may be the only solution to prevent Defendant from committing additional crimes.

---

[2] Defendant lists the address of 1917 South Carthage, MO for his home address. The investigation revealed that this address belongs to a friend or acquaintance of Defendant. During the service of a search warrant associated with this case, Defendant was located at his residence in Jay, Oklahoma (along with a significant amount of evidence establishing that he lived in Jay, Oklahoma). In his interview for the PSR, Defendant stated that he has resided in Jay, Oklahoma since 1986. (PSR ¶ 52.)

[3] Defendant's claim here is false, and it is not supported by the jury verdict and evidence.

[4] Defendant's claim here is false, as paint from his house was found to match paint in the bomb-type device. In addition, an address label located in Defendant's residence was found to be the "source" document that was used to write the return address of W.S. on the bomb-type device.

[5] Defendant's claim here is false, as his DNA partially matches the DNA located on the interior flap of the package used to house the bomb-type device.

[6] In an Order filed on December 5, 2014, the Western District of Missouri granted A.B.'s motion to dismiss with prejudice. (Exh. 4.) In that Order, the District Court apparently accepted Defendant's allegation that he was a Missouri resident. (*Id.* at 1.)

Based on the foregoing, the government submits that the defendant's history and characteristics support the imposition of a term of imprisonment at the high end of the applicable guideline range.

### c. Deterrence and Protection of the Public.

Defendant has served significant periods of incarceration in the past, which has done little to deter him from engaging in serious criminal conduct. For this reason, the government submits that a sentence at the higher end of the guideline range is required to deter Defendant from committing future crimes and to protect the public.

### d. Sentencing Recommendation.

Defendant's mail-bomb threat against J.A. was a terroristic act that caused fear in others. It also caused a significant mobilization of law enforcement, not only in the initial response but also in the follow up investigation. For all of the reasons stated herein, the government respectfully recommends that the Court impose a sentence of 95 months of imprisonment for Defendant, followed by the maximum term of supervised release. As part of his conditions of supervised release, he should be banned from having any contact (direct or indirect) with W.S., A.B., E.B. – the three people he repeatedly sued in various courts – as well as R.R. and Defendant's ex-wife, N.H.

Respectfully submitted this 10th day of December, 2014.

JOHN S. LEONARDO
United States Attorney
District of Arizona

*s/ Raymond K. Woo (w/ permission)*
RAYMOND K. WOO
Assistant U.S. Attorney

*s/ Paul V. Stearns*
PAUL STEARNS
Assistant U.S. Attorney

- 7 -

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this date, December 10, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Robert Newcomb, Esq.<br>Attorney for Defendant

*/s Paul V. Stearns, AUSA*
U.S. Attorney's Office